# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

AKELA S. BROWN,
        Plaintiff,

v.                                              Case No. 11-C-0529

ERIC K. SHINSEKI, Secretary,
Department of Veterans Affairs,
        Defendant.

## DECISION AND ORDER

Akela Brown, proceeding pro se, brings this action against Eric Shinseki, the Secretary of the Department of Veterans Affairs (the "Department"), under Title VII of the Civil Rights Act of 1964. She alleges that the Department terminated her employment as a Veterans Service Representative ("VSR") because of her race and sex, and also as retaliation for complaining about racial discrimination. Before me now is the Department's motion for summary judgment and Brown's motion to compel.

## I. BACKGROUND

Brown, a Black female, was hired as a VSR by the Department's Milwaukee office on April 29, 2007. A VSR serves as the primary contact for a veteran and is responsible for making decisions concerning the veteran's benefits claims. After she was hired, Brown was placed in what was known as the "Orange Group" of VSR trainees, which consisted of trainees hired at about the same time as her. Although membership in the Orange Group changed over time, for most of the period relevant to this suit its members were Brown, Melissa Bailey, James Suit, Bethany Poprocky, and Andrea Pottebaum. Brown

was the only non-Caucasian in this group. The supervisor in charge of the Orange Group was Susan McCarron.

The members of the Orange Group began their formal training on May 31, 2007. The initial training was classroom-based training held at the Milwaukee office. From June 11–29, 2007, the group attended "Centralized Training," which was nationwide training intended to teach the basic concepts of claims processing. After Centralized Training, the Orange Group received more classroom-based training at the Milwaukee office. In early July 2007, the group began independent casework, which involved processing actual claims for benefits. The independent-casework component of the training process lasted for several months.

To become a successful VSR, a trainee had to demonstrate that he or she could accurately process a high volume of different types of benefits claims. There were over twenty-five different types of claims, known as "topics." During the independent-casework component of the training process, the trainees began processing actual claims from selected topics. After a claim was processed by a trainee, it was reviewed by the trainee's "reviewer," who was an experienced VSR assigned to the trainee by McCarron. The reviewer checked the claim to determine whether any errors were made. If the reviewer identified any errors, he or she "called them out" and returned the claim to the trainee for corrections. After the trainee processed a sufficient number of claims from a given topic and demonstrated proficiency on that topic, the trainee was "signed off" on the topic, which meant that he or she could process claims from within that topic without having them reviewed by a reviewer. During the training process, the Department used a database to

track the types of cases each trainee worked on as well as his or her case-processing accuracy. All errors that a reviewer noted were recorded in the database.

Almost as soon as Brown began processing actual claims, she experienced difficulties. Brown was completing a low number of claims, and the claims she did complete often contained errors. Her supervisors noticed that she was struggling and offered her additional help, which she accepted. However, during the next few months, Brown continued to struggle. She continued to process a low number of claims and to have a high error rate. For the time period July 7, 2007 to November 17, 2007, which consisted of twenty weeks, Brown's accuracy rate was the lowest of all the members of the Orange Group 60% of the time (she had the lowest accuracy rate in 12 of the 20 weeks). By September 28, Brown had been signed off on only two topics. By that time, Pottebaum had been signed off on six topics, Poprocky on four topics, Suit on six topics, and Bailey on seven topics. By November 17, Brown had been signed off on only three topics, while Pottebaum had been signed off on twelve, Poprocky on ten, Suit on eight, and Bailey on eleven.

In October 2007, McCarron decided to start having weekly meetings with Brown to review her progress and to set goals for the following week. The weekly goals included a productivity goal (completing a certain number of claims per day) and an accuracy goal (achieving a certain accuracy rate). Brown routinely failed to meet those goals.

During the course of Brown's training, McCarron had been having discussions with one of her supervisors, Jim Limpose, the manager of the Veterans Service Center in Milwaukee, about Brown's lack of progress. In November 2007, Limpose began to consider terminating Brown's employment because of her poor performance. Eventually,

3

he concluded that he should do so, and Brown's employment was terminated effective November 14, 2007. Limpose made this decision in consultation with McCarron.

## II. DISCUSSION

In moving for summary judgment, the Department argues that Brown was terminated for a legitimate reason—poor performance—rather than because of her race, sex, or prior complaints about discrimination.[1] In responding to the Department's motion, Brown makes a wide variety of assertions in an effort to demonstrate that her termination was the result of discrimination and retaliation. Brown makes her assertions in a somewhat scattershot fashion, and she does not explicitly attempt to fit those assertions into either the direct method of proof or the indirect, burden shifting method of proof. Thus, I think the best way to analyze her response to the defendant's motion is to go through each of Brown's assertions one at a time.[2] After doing this, I will consider whether Brown has enough evidence to survive summary judgment.

First, Brown asserts that her poor case-processing statistics were caused by the fact that McCarron assigned Brown difficult claims and assigned the other members of the Orange Group easy claims. However, the evidence in the record does not support this assertion. When the Orange Group began processing claims, all members were assigned the same topic: the topic known as "110 EPs," which involved claims by veterans who were making a claim with the Department for the first time. See Def. Prop. Finding of Fact

---

[1] I will describe Brown's prior complaint about discrimination below.

[2] Brown filed three different documents in response to the defendant's motion for summary judgment. The document at ECF No. 36 appears to be her main brief, and so I will discuss the assertions that she makes in that document.

("DPFOF") ¶ 17. Although there were two kinds of 110 EP claims (less than one year and greater than one year), no evidence in the record indicates that Brown was assigned the harder of these kinds and that all other members of the Orange Group were assigned the easier of these kinds. Moreover, there is no evidence in the record indicating that as the training progressed, easier claims were consistently assigned to the other members of the Orange Group and harder claims were consistently assigned to Brown.

Second, Brown points out that reviewers exercised discretion when identifying errors in a trainee's work. What Brown seems to be saying is that, if a reviewer disliked a trainee for any reason, he or she could identify more errors in that trainee's work than the reviewer would have identified in the same work had it been performed by a different trainee. However, even if this is true, there is no evidence that any of Brown's reviewers disliked her, treated her less favorably than other trainees, or judged her work more harshly than they judged the work of other members of the Orange Group. Although Brown asserts that some mistakes that were made by some members of the Orange Group were not counted as errors, and that those same mistakes, when made by her, were counted as errors, no evidence in the record supports this assertion.

Third, Brown points out that, later on in the training process, she was not given the same training as the other members of the Orange Group. What she is referring to is the fact that after McCarron and the reviewers identified Brown as a struggling trainee, they removed her from the ordinary training program and put her on a separate track designed to help her succeed. The fact that Brown received different training than the other members of the Orange Group after it was determined that she was not performing as well as the other members is not evidence of discrimination.

Fourth, Brown notes that, in her October 2007 performance review, she was rated "fully successful." Brown suggests that this rating was inconsistent with a decision to terminate her employment for poor performance only a month later. However, the evidence in the record establishes that McCarron gave Brown a "fully successful" rating in order to work around the Department's policy of requiring all employees rated lower than "fully successful" to be put on performance-improvement plans, which were not available for probationary employees such as Brown. DPFOF ¶ 38. At the same time that McCarron gave Brown the "fully successful" rating, she advised Brown that she was not actually meeting expectations. DPFOF ¶¶ 39–40. Thus, the fact that Brown received this rating does not undermine the Department's explanation for its decision to terminate her employment. Although McCarron's decision to rate Brown as fully successful when she was not fully successful may have been improper as a matter of Department policy (and it is not clear that it was improper), it is not evidence of discrimination.

Fifth, Brown asserts that she was treated differently than other members of the Orange Group with respect to overtime. However, no evidence in the record supports this assertion. The only evidence in the record as to overtime has to do with McCarron's scolding Brown for not following directions regarding signing up for overtime, see DPFOF ¶ 40, and this evidence does not suggest that McCarron treated Brown differently than other members of the Orange Group with respect to overtime.

Sixth, Brown asserts that the Department assigned all minority trainees to workstations located in the same, undesirable location in the office. However, no evidence in the record supports this assertion.

Seventh, Brown asserts that McCarron used "slang" or "street talk" when talking to her. The language that Brown seems to be referring to consists of the phrases "See what I'm saying?" and "You know what I mean?" I am not sure why Brown considers these phrases slang or street talk, since although they are somewhat informal, they are commonly used in all kinds of conversations. In any event, the fact that McCarron used these phrases in her conversations with Brown does not support an inference that she was racist or treated Brown differently because of her race.

Eighth, Brown asserts that McCarron asked her about her "support system" and referenced the fact that she was a single parent. Brown seems to contend that these comments raise an inference that McCarron discriminated against her on the basis of sex. However, even if McCarron made these comments, they do not, by themselves, give rise to a reasonable inference that McCarron discriminated against Brown because of her sex. Moreover, there is no other evidence in the record indicating that McCarron engaged in sex-based discrimination.

Next, I will address Brown's retaliation claim. In her brief, Brown asserts that "one day," she asked McCarron "if all of these things (bad things) were happening to me because I was black." ECF No. 36 at 5. At her deposition, Brown testified that she could not remember exactly when she asked McCarron this question, but that it was probably in late September. Warwick Decl. Ex. 1 at 61–62, ECF No. 25-3. According to Brown, McCarron responded by saying "absolutely not." Id. Brown asserts that her asking McCarron this question somehow factored into her termination. Again, however, there is no evidence that supports this assertion.

Having gone through the assertions that Brown makes in her brief, I conclude that they do not add up to a viable discrimination claim. The only reasonable conclusion that can be drawn from the record is that Brown was terminated because of her poor performance, not because of her race, sex, or prior complaints about racial discrimination. Accordingly, I will grant the Department's motion for summary judgment.

Before concluding, I must address Brown's motion to compel. The motion relates to a set of interrogatories, requests for the production of documents, and requests for admission dated February 5, 2012. The Department responded to this set of written discovery requests on March 12, 2012. Although it is not entirely clear, Brown's problem with the responses seems to be that the Department objected to some of her requests. However, Brown does not in her motion argue that any specific objection was improper. In her reply brief in support of her motion, Brown seems to contend that she wanted the Department to produce information that would have shown that the Department waited until the start of a new fiscal year to terminate her employment. However, this information would not have been relevant to any issue in this case. The fact that the Department delayed terminating Brown's employment until the start of a new fiscal year does not support an inference that she was terminated because of race or sex or because she had made a complaint about discrimination. Accordingly, Brown's motion to compel will be denied.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the defendant's motion for summary judgment is **GRANTED**.

8

**IT IS FURTHER ORDERED** that plaintiff's motion to compel is **DENIED**.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter final judgment.

Dated at Milwaukee, Wisconsin this 29th day of August 2012.

                              s/ Lynn Adelman
                              _____
                              LYNN ADELMAN
                              District Judge